UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EBER RIVERA, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 13-11789-IT |
| | * | |
| MICHAEL THOMPSON, | * | |
| | * | |
| Respondent. | * | |

MEMORANDUM AND ORDER

August 12, 2016

TALWANI, D.J.

I.      Introduction

Petitioner Eber Rivera's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus [#1]

claims that he is being held in violation of the United States Constitution because:  (1) trial

counsel's failure to introduce evidence of a third-party culprit after promising to do so in opening

arguments violated Petitioner's Sixth Amendment right to effective assistance of counsel; (2)

trial counsel's failure to suppress an incriminating pre-*Miranda* custodial statement violated

Petitioner's Sixth Amendment right to effective assistance of counsel; (3) trial counsel's failure

to object to hearsay evidence violated Petitioner's Sixth Amendment right to effective assistance

of counsel; and (4) introduction of incompetent evidence of motive and improper evidence of

Petitioner's violent character at trial violated Petitioner's Sixth Amendment rights to a fair trial

1

and effective assistance of counsel.[1] Respondent Michael Thompson opposes the petition on the merits. For the reasons explained below, the Petition for Writ of Habeas Corpus is DENIED.

II.     <u>Procedural History</u>

A grand injury indicted Petitioner Eber Rivera for armed assault with intent to murder ("Count I"), assault and battery by means of a dangerous weapon causing serious bodily injury ("Count II"), and assault and battery upon a public employee ("Count III"). Following a six-day jury trial, Rivera was convicted on all three counts. On March 30, 2009, a judge sentenced him to nine to ten years in state prison on Count II, and five years' supervised probation on Counts I and III.

Rivera filed a motion for a new trial pursuant to Massachusetts Rule of Criminal Procedure 30(b) on multiple ineffective assistance of counsel grounds and one due process ground. SA 12. The motion was denied, SA 74, as was Rivera's subsequent motion to reconsider the denial. SA 306-07.

Rivera appealed the conviction, claiming that (1) trial counsel had been ineffective for numerous reasons, (2) the trial court erred in admitting alleged propensity evidence, (3) the cumulative effect of the errors resulted in a substantial risk of miscarriage of justice, (4) the trial court erred in denying Rivera's motion for new trial without a hearing, (5) the trial court erred in denying Rivera's motion for a required finding of not guilty on the charge of Armed Assault with Intent to Murder, and (6) the trial court erred in denying Rivera's  pre-trial motion to suppress physical evidence and identifications from photo arrays. SA 80-82. The Massachusetts Appeals

---

[1] Petitioner named a fifth ground for relief in his Petition—that a police officer stopping Petitioner at gunpoint without probable cause violated his Fourth Amendment right against unreasonable search and seizure—but did not develop the argument in his Memorandum in Support of Petition for Writ of Habeas, thereby waiving this ground for relief. <u>See</u> <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990). Petitioner's reply brief also makes no mention of this claim.

Court affirmed the judgment. <u>See</u> <u>Commonwealth v. Rivera</u>, 966 N.E.2d 867 (Table) (Mass. App. Ct. 2012). Rivera then applied for further appellate review with the Massachusetts Supreme Judicial Court ("SJC"), which the SJC denied on August 1, 2012. <u>See</u> <u>Commonwealth v. Rivera</u>, 972 N.E.2d 23 (Table) (Mass. 2012). On July 26, 2013, Petitioner filed this <u>Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody</u> [#1].

III.    <u>Background</u>

In the very early morning hours of December 16, 2007, a fight occurred outside Ana Reyes' apartment in Framingham, Massachusetts, during which Robert Williams was stabbed.[2] Petitioner Eber Rivera was arrested shortly after the incident in the neighborhood near Reyes' apartment.

According to Framingham Police Officer Gregory Reardon's report, he arrived at Reyes' apartment at approximately 2:00 a.m. on December 16, and found Williams being taken out on a stretcher. <u>See</u> Supplemental Answer ["SA"] 212. Officer Reardon then separately interviewed the three other individuals present. SA 213-14.

A.    *First Witness Interviews*

Officer Reardon first interviewed Josue Gonzalez. According to Officer Reardon's report, Gonzalez reported that he was at Reyes' apartment with Reyes, Robert Zonghi, and "another male named Fernando Alvarez who he knew as Luey" when Williams arrived. SA 214. Gonzalez's statement concerning the fight that subsequently occurred included the claim that "Mr. Alvarez" hit the suspect on the head with a baseball bat. SA 215. According to Officer Reardon's report, Gonzalez did not mention Rivera's name during the interview.

---

[2] Williams did not testify at trial. SA 901-02.

Officer Reardon interviewed Zonghi next. When Officer Reardon asked Zonghi about "Mr. Alvarez and whether [Zonghi] saw [Mr. Alvarez] hit the suspect with a bat," Zonghi "had no idea" what Officer Reardon was talking about. SA 217. Zonghi claimed that "he did not know who the suspect was and . . . that he did not get a good look at him," nor did he know anyone who had any issues with Williams. Id. Zonghi did not mention Rivera's name during the interview.

Officer Reardon next interviewed Reyes. SA 218. Reyes did not mention Rivera or "Mr. Alvarez" during the interview.

B.  *Second Witness Interviews*

Framingham police officers re-interviewed all three witnesses over the following two days, starting with Reyes. SA 226. Reyes again said she did not know who "Fernando Alvarez" was and did not see him during the fight. SA 226-27. Reyes eventually told Officer Reardon, however, that she had lied about not knowing "Alvarez." SA 229.

A Detective Hendry then conducted three photo arrays with Reyes. In the third photo array, Reyes was asked to identify the person known as Fernando Alvarez. SA 230. The array included a driver's license photo of someone with that name, as well as a booking photo of an individual known as Luis Diaz. SA 230-31. In addition, a second picture of Luis Diaz was (apparently) inadvertently included in the photo array. SA 231. Reyes identified both of the Luis Diaz photos as the same man and as the man whom she knew as "Fernando Alvarez." Id.

Officer Reardon and Sergeant Brown next conducted a second interview with Gonzalez. SA 221. According to Officer Reardon, Gonzalez stated that he, Zonghi, Reyes, and another friend "Alvarez, Fernando (AKA Luis Diaz…)" had watched the fight. SA 222-23. Gonzalez said that "it was obvious that [Rivera] was stabbing [Williams]" but that Gonzalez "could barely

see the knife" because the stabbing motions were so fast. SA 223. Gonzalez claimed that he saw

the knife after the fight, that it had a black handle with a four to five inch blade, and that Rivera

tossed it in a snowbank right after Gonzalez pulled him off Williams.[3] Id. Gonzalez also stated

that he saw Diaz hit Rivera over the head with a "metal little league baseball bat."[4] Id.

Detective Crawford and Officer Reardon next interviewed Zonghi. SA 253. Zonghi made

no mention of "Mr. Alvarez" or Diaz.

### C.  Grand Jury Proceeding

Reyes and Zonghi, along with Officers Reardon and Sistrand, testified in front of a grand

jury on January 28, 2008, approximately six weeks after the incident. SA 234. Reyes' testimony

included the statement that Luis Diaz, previously known to her as Fernando Alvarez, was at her

house the night of the incident. SA 236.

### D.  Trial

Rivera's attorney told the jury during her opening statement that "there were two other

individuals involved in this argument," including "another individual named Mr. Ruiz [sic]… In

fact, you're going to hear testimony that a Mr. Ruiz had a bat, and was also wielding a knife,"

suggesting that she would introduce evidence of a third-party culprit defense. SA 665.

Ultimately, however, no testimony whatsoever regarding a potential third party's presence was

elicited at trial. Despite not presenting this testimony, in her closing argument trial counsel twice

mentioned that "Mr. Ruiz" was "present at the party" where the stabbing occurred. SA 908-10.[5]

---

[3] There is no evidence in the record that the knife was ever found. SA 223, 616, 754.

[4] There was no evidence that Petitioner was bruised from being hit by a bat, at least none that
was ever recorded. SA 617.

[5] Both Petitioner and Respondent assume that trial counsel was referring to Luis Diaz. The
record includes neither testimony to the grand jury nor reports to the police that anyone was
"wielding a knife," and it is unknown from where counsel expected to get that testimony.

During trial, Framingham Police Officer Arthur Sistrand testified that, around 2:00 a.m. on the night of the incident, he heard a radio broadcast that "a situation was occurring" at an address on Beaver Street, approximately half to three-quarters of a mile away from where he was. SA 704-05. Officer Sistrand testified that he drove over to Beaver Street within 30 to 40 seconds and, as he drove down the street, saw "the silhouette of a subject coming across the road" at a "light jog" from the direction of the house where the incident had been reported. SA 705-09. Officer Sistrand testified that he drove toward the person (who was later identified as Eber Rivera), got out of the cruiser, identified himself and asked the individual to stop, an order the individual did not comply with. SA 709-13. Officer Sistrand testified that he then ordered Rivera to the ground at gunpoint, and he complied. SA 713. According to Officer Sistrand, while waiting for backup to arrive, he asked Rivera what he was doing. SA 716. Officer Sistrand testified that Rivera responded that he "had a beef with a nigger," to which Sistrand asked why. Id. To this, Sistrand testified, Rivera replied that he had been "disrespected." Id. Sistrand testified further that Rivera refused to answer when asked his name, stating that he was "too out of breath and too cold to respond." SA 716-17. Sistrand testified that, prior to backup arriving and prior to handcuffing and arresting Rivera, Sistrand noticed blood on his hand. SA 714. Officer Sistrand testified that when he asked Rivera how he cut his hand, he said he cut it on a ring. SA 717. Officer Sistrand testified that he was there for "a minute and a quarter, minute and a half" between getting Rivera on the ground and waiting for another officer to arrive. SA 716.

At trial, Zonghi testified that he "barely remember[ed]" who was at Reyes' house the night of the stabbing. SA 673. Zonghi further testified that "I really don't know. I didn't know those people" when asked who else was present that night besides himself, Williams, and Gonzalez. SA 679. When asked who else was in the room besides Reyes when they brought

6

Williams inside to the kitchen after the fight, Zonghi said, "I'm pretty sure there was other

people. I just don't know who." SA 685. Zonghi answered in the affirmative when the

prosecution asked him if there were people he didn't know in the kitchen at that time. Id. On

cross, Zonghi said that he did not know an individual named Luis Diaz. SA 691-92. Zonghi also

denied saying "he did it" when identifying Rivera in the photo array two days after the incident.

SA 689.

 Gonzalez and Reyes also testified at trial. Gonzalez testified that he was at Reyes' house

the night of December 15, 2007, and that "[a]t some point something happened that kind of

triggered Eber and at that point, he just went outside," with Williams following him. SA 779.

Gonzalez further testified that "growing up… it only took a little to trigger him off." SA 780.

Gonzalez testified to seeing Williams on the ground outside after being told to call the police

because Williams was bleeding, and that he saw Williams punching Rivera in the face. SA 781-

82. Gonzalez stated that he tried to separate the two men when he heard Williams say, "I think he

stabbed me." SA 783. Gonzalez went on to say that he did not "remember Eber having a knife"

so he did not "know what [Williams] was talking about." SA 785. On cross, Gonzalez testified

that he did not see a knife. SA 790. No testimony from Reyes or Gonzalez was ever elicited

about "Fernando Alvarez" or Luis Diaz.

 Finally, physical evidence was introduced at trial showing that Williams' DNA was on

the clothing Rivera wore the night he was arrested and Dr. Michael Calahane, who treated

Williams at Beth Israel Hospital, testified as to the extent of his injuries. SA 843-44; 875-82. Dr.

Calahane testified that Williams was in shock with low blood pressure and required surgery

when he arrived at Beth Israel and that Williams suffered from a laceration in his heart, a

laceration of the liver, significant internal bleeding, and loss of 30 to 40% of his overall blood

volume. SA 875-83. Dr. Calahane also stated that the injury to Williams' heart was a "lethal injury" and that "if he didn't have access to care, he would have died… he probably wouldn't have lived maybe another half an hour." SA 882.

IV.   Standard of Review

A.   *Habeas Standard of Review*

A person in state custody is eligible for habeas relief if they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may grant a habeas petition when the state court adjudication was contrary to or involved unreasonable application of clearly established federal law, or the decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

To satisfy the "contrary to… clearly established federal law" provision, a federal court may grant a habeas petition if the state court applied a rule contradicting "clearly established" Supreme Court law, or decided a case differently than the Supreme Court on "materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 405 (2000). A federal court may grant a habeas petition based on an "unreasonable application" of federal law when the state court applied the correct legal principle based on Supreme Court jurisprudence, but applied it incorrectly to the facts of the petitioner's case. Id. at 413. For an application to be unreasonable, it must be more than merely incorrect, and a state court must be granted "deference and latitude." Harrington v. Richter, 562 U.S. 86, 101 (2011).

B.   *Ineffective Assistance of Counsel Standard*

The Supreme Court case law regarding ineffective assistance of counsel looks at whether counsel's conduct "so undermined the proper functioning" of the process that the "trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686

(1984). To do so, a defendant must prove both that counsel's performance was deficient and that this deficient performance prejudiced the defense. Id. at 687. To show deficient performance of counsel, counsel's performance must fall below an "objective standard of reasonableness." Id. at 688. Establishing prejudice requires showing that there was a "reasonable probability" that the outcome would have been different but for counsel's errors. Id. at 694.

Both the Strickland and federal habeas standards are "highly deferential" and when applied in tandem, review is "doubly" deferential. Harrington, 562 U.S. at 105 (citations omitted). In reviewing a habeas claim, federal courts must avoid "equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Id. When applying the two standards together, the question becomes not whether counsel's actions were unreasonable, but whether "any reasonable argument" exists that counsel satisfied the Strickland standard. Id.

V.    Discussion

   A.    *Ground 1: Rivera claims that trial counsel's failure to introduce evidence of a third-party culprit after promising to do so in opening arguments violated his Sixth Amendment right to effective assistance of counsel.*

Rivera argues that the state court's rejection of his ineffective assistance of counsel claim, based on his trial lawyer's failure to introduce evidence of a third-party culprit after promising to do so in opening statements, was an unreasonable application of the Strickland standard under 28 U.S.C. § 2254(d)(1).[6] To do so, Rivera must prove not only that trial counsel's performance was objectively deficient and that it prejudiced his defense, but also that the Massachusetts Appeals

_____

[6] On some of his ineffective assistance of counsel claims, including this first one, Petitioner also argues an unreasonable determination of facts under 28 U.S.C. § 2254(d)(2). 28 U.S.C. § 2254(d)(2) only applies, however, to determinations of "basic, primary, or historical facts." Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001) (citation omitted). Ineffective assistance of counsel is a "mixed question of law and fact." Strickland, 466 U.S. at 698. The unreasonable application prong of 28 U.S.C. § 2254(d)(1), not 28 U.S.C. § 2254(d)(2), is thus the correct way to analyze an ineffective assistance of counsel claim. Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002).

Court was unreasonable in deciding otherwise. Respondent argues that counsel's performance neither was deficient nor did it prejudice the outcome. Respondent thus argues that the Massachusetts Appeals Court was not incorrect in its determination; *a fortiori* that determination was not unreasonable.

In assessing counsel's performance, there is a "strong presumption" that counsel's representation is within the "wide range" of reasonable professional assistance. Strickland, 466 U.S. at 689. The decision whether to call particular witnesses "is almost always strategic." Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993).

Rivera relies heavily on two cases in which the First Circuit has granted habeas petitions on ineffective assistance of counsel grounds where counsel promised to call a witness or to present important testimony in an opening and then failed to do so.[7] See Anderson v. Butler, 858 F.2d 16, 17 (1st Cir. 1988) (calling "little… more damaging" than "fail[ing] to produce important evidence than had been promised in an opening"); see also Ouber v. Guarino, 293 F.3d 19, 24 (1st Cir. 2002) (deeming it a "critical error in professional judgment" to break a promise made to the jury). In these cases, the First Circuit has held that it is the combination of making the promise regarding the evidence in the opening and later failing to present the evidence that renders counsel's performance constitutionally ineffective. See Anderson, 858 F.2d at 18 (calling it "inexcusable" to make the opening promise to call medical experts if not planning to follow through or if uncertain about presenting the evidence); see also Ouber, 293 F.3d at 27 (promising the defendant's testimony and then not presenting the testimony were decisions that may have

---

[7] Because ineffective assistance of counsel claims are extremely fact-specific, and the Supreme Court has not provided a standard more specific than Strickland, "it is helpful to examine precedents from lower federal courts to determine how the general [Strickland] standard applies to a particular set of facts" and "they are instructive for purposes of determining the proper application of Strickland in factually similar cases." Ouber, 293 F.3d at 26.

"fallen within the broad universe of acceptable professional judgments" if taken separately, but when taken together, are "indefensible").

At other times, the First Circuit has found that counsel mentioning testimony in opening statements but never eliciting it at trial to be a reasonable tactical decision by counsel, not prejudicial to the defense, or both. See Sleeper v. Spencer, 510 F.3d 32, 39-41 (1st Cir. 2007) (calling it a "misstatement" rather than a broken promise where counsel promised but did not provide an insanity defense and finding that no prejudice resulted because presenting that defense would have been inconsistent with the rest of counsel's strategy); see also Phoenix v. Matesanz, 233 F.3d 77, 85 (1st Cir. 2000) (finding that there was no explicit promise to the jury to call a particular expert witness to testify about blood evidence when counsel used the term "if anything" as a disclaimer and achieved a similar outcome by cross-examining a different witness); see also Tavares v. O'Brien, No. 04-40059-FDS, 2007 WL 2908828, at *11 (D. Mass. September 27, 2007) (finding it a tactical decision not to call witnesses promised in the opening when counsel became aware, after opening statements, that these witnesses were unwilling to testify).

The First Circuit has distinguished between the "alleged breach of a promise to present an additional defense… [and] a promise to provide specific testimony from a particular witness," finding the latter, but not the former, prejudicial to the defendant. Sleeper, 510 F.3d at 41. This is because "a breached promise [to present evidence] can injure" a defendant because it can make the jury believe that "the omitted evidence would have harmed an otherwise viable defense," whereas abandoning one defense "ordinarily will not impair counsel's ability to proceed with the remaining defenses." Id.

*1.   Strickland* Prong 1: Unreasonable Performance

The unreasonableness inquiry on habeas review requires the court to determine whether the Appeals Court's application of Strickland's performance prong was objectively unreasonable when it determined that counsel's performance did not fall below the constitutional minimum. The Appeals Court concluded that the failure to pursue third-party culprit evidence was "a matter of tactics based on how the Commonwealth's evidence unfolded and the lack of corroboration for the third party's involvement." Commonwealth v. Rivera, 966 N.E.2d 867 (Table) (Mass. App. Ct. May 10, 2012). Respondent elaborates that defense counsel chose to abandon the third-party culprit defense as a matter of tactics when, on cross examination, Zonghi denied seeing Diaz that night. See Resp't's Mem. Law Opp'n Pet. Writ Habeas Corpus [#28]; see also Ouber, 293 F.3d at 29 (noting that "unexpected developments sometimes may warrant changes in previously announced trial strategies").

Rivera articulates several problems with this argument. See Pet'r's Reply Mem. Supp. Claims Habeas Corpus Relief ["Pet'r's Reply"] [#30]. First, trial counsel never asserted that she decided to abandon the third-party culprit defense. SA 201. Moreover, despite failing to elicit evidence of a third party's involvement or presence, counsel still twice mentioned "Mr. Ruiz" in her closing argument, foreclosing the argument that she had decided to abandon that argument. SA 908-10.

In addition, Zonghi's testimony would have given reasonably competent counsel little reason to change tactics, as Zonghi had never mentioned Diaz (or even "Fernando Alvarez") in his police interviews or grand jury testimony. Thus, Zonghi's testimony should not have surprised counsel nor provided a basis for abandoning a line of defense promised in her opening statement. See Ouber, 293 F.3d at 29 (finding trial counsel could not be said to have changed

strategy based on an unforeseen circumstance where "nothing occurred during the trial that could have blindsided a reasonably competent attorney or justified a retreat from a promise previously made"). Moreover, contrary to Respondent's assertion, Zonghi did not testify that he did not *see* Diaz at Reyes' apartment night of the incident; he testified that he did not *know* Diaz.

It is possible, however, that counsel decided that questioning Gonzalez and Reyes (the two witnesses who had mentioned Diaz according to police reports) would have been futile or damaging. See Tavares, 2007 WL 2908828, at *11-12 (finding that an ineffective assistance claim based on an unfulfilled opening promise to present alibi witnesses was without merit when the reason for not presenting the witnesses was their subsequent reluctance to testify). Although Gonzalez's account (in both of his police interviews) placed Diaz at the scene of the fight, Gonzalez also asserted that Diaz was hitting Rivera with a baseball bat. Had this testimony been elicited, the jury might have inferred that Diaz was trying to stop Rivera from attacking Williams, not that Diaz was the one attacking Williams. Gonzalez's testimony thus likely would have further implicated Rivera and counsel had a sound tactical basis for not eliciting it. See Phoenix, 233 F.3d at 82 (upholding on habeas review the state court's determination that it was a tactical choice not to call a witness whose testimony was just as likely to implicate as to exculpate the defendant). It thus cannot be said that "no reasonable argument" existed for counsel's failure to elicit evidence of Diaz's presence on the night of the fight.

But no tactical reason has been suggested for claiming during her opening statement that "Mr. Ruiz" was "wielding a knife." Counsel was unable to deliver on the promise at all, as she apparently had no evidence in support of this claim, and so she should not have promised those statements in her opening. See Anderson, 858 F.2d at 18 (finding that, when counsel was unsure about presenting evidence, "it was inexcusable to have given the matter so little thought at the

outset as to have made the opening promise"). Mentioning a third party with a knife in the opening when there was no evidentiary support to do so constituted deficient performance.

*2.   Strickland* Prong 2: Prejudice

The Court of Appeals did not reach the prejudice prong because it found that counsel's representation was not ineffective under the first Strickland prong. This court's review of the prejudice prong is therefore *de novo*. See Wiggins v. Smith, 539 U.S. 510, 534 (2003) (stating that "our review is not circumscribed by a state conclusion with respect to prejudice, as neither of the state courts below reached this prong of the Strickland analysis"). [8]

The court must determine whether there is a strong possibility trial counsel's unfulfilled promise affected the outcome of trial. Ouber, 293 F.3d at 33. In assessing this probability, courts look to whether the promise in the opening statement was specific enough to consider it a broken promise to the jury. See Phoenix, 233 F.3d at 85 (stating that "[c]ases that premise a habeas writ on an unfulfilled promise during opening [statements]" will require "specificity in the promise"). Prejudice may be found where the jury was "likely to infer" from counsel's failure to deliver promised testimony that the witness who would have testified was "unwilling to testify for the defense." United States v. Gonzalez- Maldonado, 115 F.3d 9, 15 (1st Cir. 1997).

Moreover, counsel did not hedge or qualify her promise in a way that might mitigate the harm caused by the broken promise. See Phoenix, 233 F.3d at 85 (finding that hedging the promise that tests would show that blood evidence did not belong to the defendant by saying "if anything" mitigated the harm of a broken promise to the jury).

---

[8] Because the court finds that it was the mention of the knife, and not the mention of Diaz's presence generally, that was ineffective, this is the only issue on which the court reaches the issue of prejudice.

Counsel's promise, however, was distinguishable from those statements where prejudice was found in <u>Ouber</u> and <u>Anderson</u> in a critical respect. In those cases, the testimony *could* have been presented had counsel's performance not been deficient. Here, however, counsel could *not* have presented the testimony that she promised in her opening. There is no evidence in the record to suggest that any witness would have testified to a third party wielding a knife, as counsel promised. Where the most critical parts of the promised testimony could not have been provided, it is difficult to say that, but for counsel promising and failing to deliver that non-existent evidence, the outcome would have probably been different. Counsel erred in promising undeliverable testimony, but it cannot be said that this promise prejudiced the outcome of the proceedings here.

Therefore, although Rivera makes a compelling case as to the promise of a knife-wielding third party, ultimately Rivera has not established that promising and failing to deliver evidence that was not available would have affected the outcome of his trial and, for this reason, the habeas petition is DENIED on this ground.

> **B.** *Ground Two: Rivera claims that trial counsel's failure to suppress an incriminating pre-Miranda custodial statement violated his Sixth Amendment right to effective counsel.*

Petitioner alleges that his trial lawyer was ineffective by failing to move to suppress incriminating statements made to Officer Sistrand shortly after the incident and before any *Miranda* warnings were given.

Rivera argues that the Appeals Court's determination that Officer Sistrand's questions did not rise to the level of an interrogation was a conclusory finding. Respondent disagrees, and further argues that even if these statements were obtained through custodial interrogation without

*Miranda* warnings, counsel's failure to make such a motion did not result in any prejudice to Rivera.[9]

The prosecution may not use statements resulting from "custodial interrogation" of a defendant without "procedural safeguards" to protect the defendant's Fifth Amendment right against self-incrimination.  Miranda v. Arizona, 384 U.S. 436, 444 (1966). Custodial interrogation consists of questioning by law enforcement agents "after a person has been taken into custody" or otherwise deprived of his freedom "in any significant way." Id. Neither Respondent nor the Massachusetts Appeals Court dispute that Rivera was in custody while lying face down on the street with an officer, with his gun drawn, standing over him. The Appeals Court found, however, that Sistrand's questions "did not constitute interrogation for the purposes of *Miranda* warnings" and that counsel's failure to move to suppress the statement was therefore not unreasonable. Rivera, 2012 WL 1623373, at *2-3.

The governing Supreme Court law defines interrogation as "express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). This includes "any words or actions on the part of the police… that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301. An incriminating response is "any statement—whether inculpatory or exculpatory—that the prosecution may seek to introduce at trial." Id. at 301 n.5.

Here, Officer Sistrand told Rivera to stop after learning of the stabbing and seeing Rivera come from the direction of the stabbing. When Rivera did not stop, Officer Sistrand ordered Rivera to the ground and drew his gun. Sistrand then asked direct questions, including his first

---

[9] Respondent also argues that it was not unreasonable for counsel to not move to suppress these statements, because doing so may have only served to draw more attention to the incriminating statements. Such a motion could have been brought outside the presence of the jury, however, negating this concern.

question, "what are you doing?" Based on the circumstances, it is certainly arguable that Sistrand should have known that this question, and the subsequent questions after Rivera responded that he "had beef with a nigger," was reasonably likely to elicit an incriminating response. Thus, had counsel moved to suppress Rivera's statements, the motion may have been successful.

But assessing custodial interrogation is a highly fact-specific inquiry, and police may ask preliminary "background" information without giving *Miranda* warnings. See United States v. Doe, 878 F.2d 1546, 1551 (1st Cir. 1989) (noting the "well-established" exception to *Miranda* for "routine booking interrogation" consisting of basic questions regarding a suspect's "name, address, and related matters" because such questions serve a legitimate purpose and are not inherently intimidating). The Appeals Court's determination that Petitioner was not subject to interrogation is accorded deference and latitude, and therefore must be unreasonable, not just incorrect.

Additionally, to prevail on his ineffective assistance of counsel claim, Rivera must demonstrate not only that counsel was objectively unreasonably in not moving to suppress the statements and that this prejudiced the jury, but also that it was unreasonable for the Appeals Court to decide otherwise.  Under the "doubly deferential" standard of review of counsel's performance in the habeas context, Rivera can only show ineffective assistance of counsel if there is "no reasonable argument" for counsel's actions. See Scoggins v. Hall, 765 F.3d 53, 58 (1st Cir. 2014) (stating that "under the applicable standards of review" in assessing a habeas claim on ineffective assistance of counsel grounds, the relevant inquiry is whether "the state court acted reasonably in determining that defense counsel's decision . . .was not beyond the pale of reason"). Determining the reasonableness of counsel's actions requires "considering all the circumstances." Strickland, 466 U.S. at 688. See Roe v. Flores-Ortega, 528 U.S. 470, 479-80

(2000) (declining to establish a "bright-line rule" that failure to file a notice of appeal would always be constitutionally deficient performance of counsel in favor or a circumstantial approach).

Trial counsel may have believed that a motion to suppress would be unsuccessful— a belief that, while potentially erroneous, is not unreasonable. See Premo v. Moore, 562 U.S. 115, 124 (2011) (remarking that the relevant standard under Strickland is whether "no competent attorney would think a motion to suppress would have failed"). Indeed, during a conversation with counsel outside of the jury's presence during trial, the trial judge expressed the view that *Miranda* warnings were not required in this situation. SA 892-93.[10] Although, as noted above, a motion to suppress Rivera's statements may have been well-founded, this does not mean that no reasonable argument existed for failing to move to suppress the statements. Given the deferential standard of review, the fact-specific nature of the inquiry, and the well-established exception for routine and preliminary booking questions, the Appeals Court was not unreasonable in deciding that *Miranda* warnings were unnecessary and that counsel's failure to move to suppress those statements was not unreasonable.

Rivera also has not established that he was prejudiced by counsel's failure to move to suppress. Rivera argues that the prejudice caused by admitting his statements was "substantial" because the statements amounted to a confession and constituted the only direct evidence of motive or intent. Rivera contends that this evidence was particularly prejudicial to the armed assault with intent to murder charge.

It is, of course, difficult to determine whether there was a "reasonable probability" that a jury would have decided differently had counsel successfully moved to suppress these

___

[10] Unlike the Appeals Court's determination, the trial judge's opinion that *Miranda* warnings were unnecessary seemed to hinge on Rivera not being in custody. SA 892.

statements, but courts "must consider the totality of the evidence before the judge or jury" when

doing so. Strickland, 466 U.S. at 695. The totality of the evidence suggests no prejudice here.

Although Rivera may be correct that his statements to Officer Sistrand was the only direct

evidence regarding his intent, other evidence existed that Rivera went outside to settle a dispute

and engaged in a fight with Williams. See Gonzalez-Soberal v. United States, 244 F.3d 273, 278

(1st Cir. 2001) (noting that a "significant factor weighing in favor of finding prejudice is the

absence of any other corroborating evidence"). Moreover, as Respondent points out, Rivera's

statements do not mention a stabbing or a knife; the more compelling evidence to support the

intent to murder element was not this statement but the nature and severity of Williams' wounds.

Although there is some merit to Rivera's claim that counsel should have sought to

suppress his statements, this is not enough to overcome the "doubly deferential" standard

applicable to a Strickland claims on habeas review and accordingly, his habeas petition on this

ground is DENIED.

### C.   Ground Three: Rivera claims that trial counsel's failure to object to hearsay evidence violated his Sixth Amendment right to effective counsel.

Rivera contends that trial counsel was constitutionally ineffective in failing to move to

exclude unreliable hearsay evidence. Rivera argues that the Appeals Court unreasonably applied

Strickland in determining that, because the pertinent statement was admissible as a "prior

identification," trial counsel was not constitutionally ineffective for failing to object to it.

The evidence in question is testimony from Officer Stacy Macaudda regarding Zonghi's

identification of Rivera in a photo array. At trial, Officer Macaudda testified that Zonghi, upon

looking at a photo array at the police station two days after the incident, "said that No. 4 was

[Rivera], and that *he did it*." SA 698-99 (emphasis added). Zonghi had testified just prior to

Officer Macaudda and, when asked about his identification of Rivera in the photo array, Zonghi testified that he said "that's Eber" when he saw Rivera's photo in the array, but nothing else. SA 689.

In denying Rivera's direct appeal on this claim, the Appeals Court stated that "it was not ineffective assistance for counsel to not object to an officer's testimony regarding a witness's prior identification where that testimony was not hearsay…" See Commonwealth v. Rivera, 966 N.E.2d 867 (Table) (Mass. App. Ct. 2012). The case the Appeals Court relied on in reaching this conclusion was Commonwealth v. Le, 828 N.E.2d 501 (Mass. 2005). In that case, the SJC held that a police officer testifying to a prior identification as substantive evidence (and not merely for impeachment purposes) is permissible, even when the witness later denies making the identification. Id. at 506.

Respondent argues that objecting would have been fruitless under Le, and so counsel could not be deficient for failing to do so. See Vieux v. Pepe, 184 F.3d 59, 66 (1st Cir. 1999) (finding that counsel was not deficient in failing to object when precedent suggested that the court would have overruled that objection). Rivera argues, however, that his case was not controlled by Le because Zonghi's alleged statement that Rivera "did it" was "not based on actual observation of the stabbing, but was rather based on either hearsay or speculation." See Pet'r's Mem. Supp. Claims Habeas Corpus Relief [#18].

Assuming Rivera is correct that Macaudda's testimony was not admissible under Le because it went beyond a prior identification, the court must still determine whether a reasonable, tactical reason existed for counsel not objecting to the evidence. Counsel may have thought such an objection not only futile but also prejudicial, as objecting would only call further attention to the issue. See Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (noting that "when trial counsel

focuses on some issue to the exclusion of others, there is a strong presumption he did so for

tactical reasons"). Considering that Zonghi had testified that he did not observe the fight and that

no evidence was offered that Zonghi did observe it, counsel may very well have believed that the

jury possessed sufficient information to discount Officer Macaudda's testimony and had seen no

need to object.

Nonetheless, even if counsel acted objectively unreasonably in failing to object to

Macaudda's testimony, Rivera has not established that he suffered the necessary prejudice. It is

highly unlikely that, but for trial counsel's failure to object to Officer Macaudda's statement, the

outcome would have been different. Zonghi testified that he had not observed the fight firsthand.

SA 682-83. Zonghi also denied making the "he did it" comment, so the jury was aware that those

words were disputed. SA 688-89. Rivera's counsel also noted the discrepancy in Zonghi's and

Macaudda's testimony in her closing argument, stating that "there was a little bit of dispute in

testimony" on that issue and emphasizing that Officer Macaudda had no personal knowledge of

the fight. SA 915. Because the jury was equipped with the knowledge that a factual dispute

existed on this issue and that Zonghi denied witnessing the fight firsthand, Rivera was not

prejudiced by trial counsel's failure to object to Macaudda's testimony. See Le, 828 N.E.2d at

508 (stating that "where the jury are confronted with disputed testimony concerning

identification, they can determine whose version to believe," the witness who denies or fails to

remember making the identification, or the observer who claims that the witness did make the

identification). Additionally, Zonghi's purported statement that Rivera "did it" was not the sole,

or even most important, evidence pointing to Rivera being the person in the fight with Williams.

See Logan v. Gelb, 52 F. Supp. 3d 122, 133 (D. Mass 2014) (finding that striking "purported

hearsay" would not have been enough to "cast doubt on the jury's finding" where sufficient

additional evidence existed on that issue). The Appeals Court thus did not unreasonably apply the <u>Strickland</u> standard on this issue, and the habeas petition is DENIED on this ground.

> D. *Petitioner's Fourth Ground for Relief: Rivera claims that introduction of incompetent evidence of motive and improper evidence of his violent character at trial violated his Sixth Amendment rights to a fair trial and effective counsel.*

Rivera's fourth claim also asserts a violation of his Sixth Amendment rights to effective assistance of counsel and to a fair trial. This claim is based upon the admission of allegedly improper evidence of Rivera's motive and violent character. Specifically, Rivera maintains that Gonzalez's testimony that "something happened that kind of triggered Eber [Rivera]" was beyond the scope of Gonzalez's personal knowledge and that "growing up it only took a little to trigger Eber off… he is a person who is easily moved" was inadmissible propensity evidence. Rivera's argument with regard to these statements is twofold. First, Rivera claims that counsel was constitutionally deficient for failing to object to the initial statement. Second, Rivera claims a violation of his right to a fair trial when the court overruled counsel objection to the second statement.

Rivera relies on Massachusetts case law to establish the inadmissibility of both of Gonzalez's challenged statements. First, Rivera contends that counsel should have objected to Gonzalez's statement that something "triggered" Rivera because such testimony was inadmissible under <u>Commonwealth v. Whitehead</u>, 400 N.E.2d 821 (Mass. 1980) (standing for the proposition that witnesses cannot speak to something they have no personal knowledge of). However, as in <u>Whitehead</u>, Gonzalez's statement that Rivera was "triggered" was based on Gonzalez's "own impressions of happenings in which [he] was involved," and the credibility of these statements were left for the jury to assess. <u>Whitehead</u>, 400 N.E.2d at 834. Accordingly, because Rivera has not established that Gonzalez's first statement was inadmissible under

Massachusetts evidence law, it was not unreasonable for counsel to fail to object to that evidence. See Barry v. Ficco, 392 F. Supp. 2d 83, 101 (D. Mass. 2005) (finding that counsel was not ineffective in failing to object to the admission of evidence when it was "far from clear that an objection to the testimony would have been successful").

As to the trial court's failure to sustain counsel's objection to Gonzalez's subsequent statement that growing up, Rivera was easily "triggered," Rivera contends this was error under Commonwealth v. Baker, 800 N.E. 2d 267 (Mass. 2003) (representing the notion that evidence of prior bad acts is inadmissible). Even assuming Rivera is correct, however, a violation of state law does not necessarily warrant habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (stating that it is not the "province of a federal habeas court to reexamine state-court determinations on state-law questions" but rather to determine "whether a conviction violated the Constitution, laws, or treaties of the United States"). Rather, the question is whether the Appeals Court unreasonably applied Supreme Court precedent in concluding that the trial court's admission of the challenged testimony did not violate Rivera's federal constitutional rights.

Because there is no "clearly established" Supreme Court precedent regarding "the admission of prior bad acts evidence, the broader fair-trial principle is the beacon by which we must steer" on this issue. Coningford v. Rhode Island, 640 F.3d 478, 485 (1st Cir. 2011). "The absence of an on-point pronouncement from the Supreme Court" makes it difficult for a habeas petitioner to prove "an unreasonable application of the broader fair-trial principle." Id. To merit habeas relief, "an improper ruling on an evidentiary issue in state court must be. . . arbitrary and capricious." Garuti v. Roden, 733 F.3d 18, 24 (1st Cir. 2013) (citation and internal quotation marks omitted). Regardless of whether a ruling is "an unarguably correct evidentiary ruling," it

does not rise to a constitutional violation warranting habeas relief as long as the ruling is "within the universe of plausible evidentiary rulings." Coningford, 640 F.3d at 485.

Gonzalez's statement that "growing up, it only took a little to trigger him off," added little to the question of intent that the Gonzalez's first statement had not already established. Accordingly, the admission of Gonzalez's second statement, even if incorrect under state law, was not so unreasonable as to be arbitrary and capricious and a denial of due process.

Consequently, Petitioner's Sixth Amendment rights to counsel and a fair trial were not violated, and thus the Appeals Court was not unreasonable in denying his appeal on those bases. The habeas petition is DENIED on this ground.

E.    Cumulative Error

Finally, Petitioner contends that even if no individual error warrants habeas relief, the cumulative effect of all errors does. However, "[a]bsent any particularized error, there can be no cumulative error." Williams v. Drake, 146 F.3d 44, 49 (1st Cir. 1998). There can thus be no Sixth Amendment violation on the basis of cumulative error where the individual errors have not been "actually determined to be constitutional error." Martinez v. Spencer, 195 F. Supp. 2d 284, 311 (D. Mass. 2001). Neither "the cumulative effect of counsel's actions deemed deficient" nor the "combined or individual effect of the prejudice" amounts to a Sixth Amendment claim. Id. at 311-12 (citation and quotation marks omitted). Therefore, any argument regarding cumulative error is without merit absent a finding of constitutional error on one of the individual bases for relief.

VI.    Conclusion

For the foregoing reasons, the Petition for the Writ of Habeas Corpus [#1] is DENIED.

IT IS SO ORDERED.

24

Date: August 12, 2016                          /s/ Indira Talwani
                                               United States District Judge